UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| DOUGLAS E. MOILANEN, | Case No. 07-CV-3134 (PJS/RLE) |
| Plaintiff, | |
| v. | ORDER |
| EDUCATION MINNESOTA, | |
| Defendant. | |

---

Michael C. Rajkowski and Ronald W. Brandenburg, QUINLIVAN & HUGHES, P.A., for plaintiff.

Roger A. Jensen and Carol A. Baldwin, JENSEN, BELL, CONVERSE & ERICKSON, P.A., for defendant.

Plaintiff Douglas Moilanen brings claims of breach of a collective bargaining agreement ("CBA"), violation of the Americans with Disabilities Act ("ADA"), and violation of the Age Discrimination in Employment Act ("ADEA") against his former employer, Education Minnesota. This matter is before the Court on Education Minnesota's motion for summary judgment. For the reasons that follow, the Court grants the motion and dismisses Moilanen's complaint.

I. BACKGROUND

Moilanen worked for Education Minnesota from 1985 until 2006. During his employment, Moilanen was a member of The Education Minnesota Professional Organization ("TEMPO"), a union which is a party to a series of CBAs with Education Minnesota. Each CBA covered a two-year period. The 2002-2004 and 2004-2006 CBAs both contain the following provision:

> Income Protection. Education Minnesota will pay the full
> premium for an income protection plan which will provide after

>    ninety (90) calendar days of disability, at least two-thirds of salary
>    to age seventy (70).

Docket No. 35 at 22; Docket No. 36 at 21.[1]  Pursuant to this provision, Education Minnesota purchased a Group Long-Term Disability Insurance Policy ("the policy") from UNUM Life Insurance Company ("UNUM").  *See* Docket Nos. 37, 38.[2]

The policy contains two limitations that are at issue in this case.  First, the maximum monthly benefit available under the policy is $5,000, for a total of $60,000 per year.  Docket No. 37 at 5.[3]  Second, the policy contains a two-year cap on benefits for disability due to mental illness (with certain exceptions not relevant here).  Docket No. 37 at 23.  Because of these limitations, the policy allegedly fails to comply with the CBA.  Specifically, a person earning more than $90,000 per year would receive, at most, $60,000 per year under the policy, which is less than the "two-thirds of salary" promised by the CBA.  In addition, a person disabled by

---

[1]Education Minnesota did not provide an index to its exhibits, and unfortunately the exhibits are not labeled in a manner that would enable the Court to cite to them (or easily locate them in the record).  The Court will therefore cite the docket numbers of these exhibits.  The page numbers refer to the printed number on the top of the electronically filed copy of each docket entry.

[2]Docket Nos. 37 and 38 are both copies of the policy.  The second copy was apparently sent by UNUM in 1998 to reflect that Education Minnesota's name had changed.  (Education Minnesota was created through a 1998 merger of the Minnesota Education Association and the Minnesota Teachers Federation.)  Nevertheless, the parties generally refer to the original policy (Docket No. 37) as the governing policy.  The Court will do likewise.  The Court also notes that the original policy was issued by UNUM's predecessor, Unionmutual Stock Life Insurance Company of America.  References to UNUM are intended to include its predecessor.

[3]The copy of the policy that UNUM sent to Education Minnesota in 1998 states that the maximum monthly benefit is $7,500, with a handwritten notation stating "effective 9/1/04."  Docket No. 38 at 6.  Neither party has contended that Moilanen was eligible for or received a monthly benefit greater than $5,000 under this version of the policy.

mental illness would not receive benefits "to age seventy (70)" as promised by the CBA, unless he happened to be within two years of turning seventy when he became disabled.

In late 2003, Moilanen went on sick leave due to depression. Moilanen Aff. ¶ 5. His condition did not improve, and he began receiving long-term disability benefits on January 7, 2004. Moilanen Aff. ¶ 10. In April 2005, UNUM sent Moilanen a letter informing him of the two-year cap on benefits related to mental illness. Docket No. 36 at 57-58. But Moilanen was not concerned about the two-year cap because he did not believe that he would remain disabled for the full two years. Moilanen Aff. ¶ 9. As it turned out, Moilanen remained on disability until his benefits expired, after which he used his remaining sick leave. Moilanen's last day of employment was February 9, 2006. Compl. ¶ 14.

Although he was not terribly concerned about the two-year cap while he remained on disability, Moilanen did promptly object to the $5,000 monthly limitation as being contrary to the CBA. In October 2005, TEMPO filed a grievance on Moilanen's behalf over the monthly limitation. Docket No. 39 at 2-3. TEMPO settled the grievance with Education Minnesota before the grievance was arbitrated. Docket No. 33 at 8. In August 2006, TEMPO notified Moilanen of the settlement and asked him to return a signed release of claims and other documents to put the settlement into effect. Docket No. 39 at 59.

By that time, however, Moilanen's disability benefits had expired, and he wanted to protest the two-year cap in addition to the $5,000 monthly limitation. Moilanen refused to sign off on the settlement and demanded written assurance from TEMPO that the union would do something about the two-year cap. Moilanen claimed to have expressed concern about the two-year cap "many months ago." Docket No. 36 at 46. In response, TEMPO denied that Moilanen

had ever complained about the two-year cap and refused to take formal action on Moilanen's behalf with respect to the cap because Moilanen was no longer a member of the union. Docket No. 36 at 49. In September 2006, Moilanen filed charges of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") against both Education Minnesota and TEMPO. Docket No. 36 at 51-52, 54-55.

## II. ANALYSIS

### A. Standard of Review

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if the evidence is such that a reasonable jury could return a verdict for either party. *Ohio Cas. Ins. Co. v. Union Pac. R.R.*, 469 F.3d 1158, 1162 (8th Cir. 2006). In considering a motion for summary judgment, a court "must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the non-moving party." *Winthrop Res. Corp. v. Eaton Hydraulics, Inc.*, 361 F.3d 465, 468 (8th Cir. 2004).

### B. Counts I and II

In Counts I and II, Moilanen asserts claims for breach of the CBA. The exclusive remedy for breach of a CBA is a claim under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). *See Schuver v. MidAmerican Energy Co.*, 154 F.3d 795, 799

(8th Cir. 1998) (Section 301 "completely preempts state law claims founded directly on rights created by collective-bargaining agreements" (citation and quotations omitted)). Before bringing suit under § 301, an employee must ordinarily exhaust any mandatory grievance procedure in the CBA. *Vaca v. Sipes*, 386 U.S. 171, 184-85 (1967). But the employee may be excused from the exhaustion requirement in certain circumstances. For example, the employee need not exhaust if his failure to do so is the result of his union's breach of its duty of fair representation. *Smegal v. Gateway Foods of Mpls., Inc.*, 763 F.2d 354, 359 (8th Cir. 1985) ("Only if exhaustion has been precluded by the Union in breach of its duty of fair representation can this obligation be bypassed."). Similarly, the employee may be excused from the exhaustion requirement if his employer repudiated the grievance process, *Waldron v. Boeing Co.*, 388 F.3d 591, 593 n.2 (8th Cir. 2004), or if other circumstances rendered the grievance process "wholly futile," *Glover v. St. Louis-San Francisco Railway Co.*, 393 U.S. 324, 330 (1969).

If the CBA contains a finality provision, an employee who exhausts the grievance process is ordinarily bound by the result of that process. *Waldron*, 388 F.3d at 594; *Bills v. U.S. Steel LLC*, 267 F.3d 785, 788 (8th Cir. 2001). To bring a suit for breach of the CBA directly against his employer, such an employee must plead and prove that the union breached its duty of fair representation in its handling of his grievance. *Waldron*, 388 F.3d at 594.

At the end of the day, then, an employee who has failed to grieve his claim is in essentially the same position as an employee who has fully grieved his claim: In either case, the employee is barred from seeking judicial relief unless the employee can establish some defect in the grievance process. With these precepts in mind, the Court turns to Moilanen's § 301 claims.

1.  Count I

In Count I, Moilanen alleges that the two-year cap on benefits related to mental illness violates the CBA. It is undisputed that Moilanen did not grieve this alleged breach, and Moilanen does not argue that his failure to grieve is the result of any breach of the duty of fair representation by TEMPO. To the contrary, Moilanen expressly disavows any claim that TEMPO breached its duty of fair representation. Moilanen also conceded at oral argument that the contractual grievance process in the CBA is mandatory and that his breach-of-contract claims are "grievances" subject to this process within the meaning of the CBA.[4] It appears, then, that Count I is barred by Moilanen's failure to exhaust the grievance process.

Moilanen argues, though, that he was not required to exhaust because his claim is a "straightforward" breach-of-contract claim, rather than what is known as a "hybrid" claim. A "hybrid" claim is a claim that involves both a breach-of-contract claim against the employer and a breach-of-duty-of-fair-representation claim against the union. Moilanen's analysis on this point is a bit muddled. Whether or not a claim is "hybrid" is relevant to determining what statute of limitations applies to the claim, not to determining whether exhaustion is required. ("Hybrid" claims are governed by the six-month limitations period of 29 U.S.C. § 160(b), *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 155 (1983), while a "straightforward" breach-of-contract claim is governed by whatever limitations period applies to breach-of-contract actions under the law of the relevant state, *UAW v. Hoosier Cardinal Corp.*, 383 U.S. 696, 704-05 (1966).)

---

[4] The CBA defines a "grievance" as "any claim that there has been a violation, misinterpretation, or misapplication of the terms of this contract . . . ." Docket No. 35 at 12; Docket No. 36 at 12. Moilanen's claims that Education Minnesota breached the CBA by failing to obtain a disability policy in compliance with the CBA's requirements plainly fall within this definition.

Of course, when an employee brings a "hybrid" claim, his reason for doing so may be to overcome the exhaustion requirement that would otherwise bar his § 301 claim. A "hybrid" claim necessarily involves a claim that the union breached its duty of fair representation — and, if established, such a breach can excuse a failure to exhaust. But a "hybrid" claim is not the only way to overcome the exhaustion requirement. As discussed above, an employee may avoid the exhaustion requirement by proving that the employer repudiated the contractual grievance process or by proving that invoking the grievance process would have been futile. In such cases, some courts have held that the employee's claim is not a "hybrid" one subject to the six-month limitations period of 29 U.S.C. § 160(b). *See Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc.*, 822 F.2d 188, 191-92 (1st Cir. 1987) (where the employee was excused from the exhaustion requirement because of the employer's repudiation, his claim was not "hybrid"). But regardless of whether the employee's claim is properly labeled as "hybrid," the bottom line is the same: The employee must establish a basis for failing to exhaust the mandatory grievance process; if he does not, his § 301 claim must be dismissed. *Cf. id.* (analyzing whether the employee had excused his failure to exhaust even though his claim was not "hybrid").

Moilanen next argues that he was not required to exhaust because Education Minnesota repudiated the contract. But the only evidence of this alleged repudiation to which Moilanen points is Education Minnesota's failure to purchase a disability policy that conforms to the requirements of the CBA. Obviously, though, an allegation that an employer breached a CBA is not the same as an allegation that an employer repudiated the grievance process established by the CBA. If it were, no employee would ever be required to exhaust because in every § 301 case the employer is accused of breaching the CBA. The relevant inquiry is not whether the employer

breached the CBA — which, again, is alleged in *every* § 301 case — but whether the employer repudiated the contractual grievance process. *See Carpenters Fringe Benefit Funds of Ill. v. McKenzie Eng'g*, 217 F.3d 578, 585-86 (8th Cir. 2000) (employer's breach was not a repudiation of the arbitration provision and did not excuse the unions' failure to exhaust).

There is no evidence that Education Minnesota repudiated the contractual grievance process. To the contrary, Education Minnesota submitted to that process when Moilanen challenged the $5,000 monthly limitation on disability benefits. Moilanen's grievance involved an alleged breach of the same provision of the CBA that was allegedly breached by the two-year cap on benefits related to mental illness. There is simply no evidence that Education Minnesota repudiated the contractual grievance process — either in general or with respect to Moilanen's complaint about the two-year cap.

Moilanen also argues that any attempt to use the grievance process would have been futile because TEMPO could not compel UNUM to continue paying him benefits. But Moilanen's claim is against Education Minnesota, not UNUM. Education Minnesota was a party to the CBA, and Education Minnesota could have been held liable through the grievance process for any breach of the CBA. Indeed, when TEMPO grieved the $5,000 monthly limitation on Moilanen's behalf, Education Minnesota agreed to settle the claim by paying money to Moilanen. As noted, that grievance was based on the same provision in the CBA and related to the same disability policy. Under these circumstances, Moilanen cannot show that invoking the grievance process would have been futile.

Finally, Moilanen cites *Anderson v. Alpha Portland Industries, Inc.* for the proposition that, as a retiree, he was not required to exhaust the CBA's grievance process. 752 F.2d 1293,

1298 (8th Cir. 1985). *Anderson* does not, as Moilanen seems to assume, establish a per-se rule that retirees are never subject to mandatory grievance procedures.[5] But even if it did, *Anderson* would not help Moilanen in this case. Moilanen's disability benefits expired on January 6, 2006, Moilanen Aff. ¶ 10, and Moilanen had been aware since at least April 2005 that his benefits would be capped at two years under the mental-illness provision. At the latest, then, Education Minnesota was in breach as of January 7, 2006. But Moilanen's last day of employment was not until February 9, 2006. Thus, Moilanen had just over a month to initiate the grievance process before he retired.[6] Moilanen offers nothing that would excuse his failure to grieve his dispute. The best Moilanen can do is point to evidence in the record that he complained about the two-year cap to TEMPO. But Moilanen does not contend that he ever asked TEMPO to file a grievance on his behalf and, as noted, he does not claim that TEMPO breached its duty of fair representation.

In sum, Moilanen was required to exhaust the contractual grievance process with respect to the two-year cap on benefits for disability caused by mental illness. Moilanen's failure to exhaust his remedies bars his § 301 claim that the two-year cap breached the CBA. Education Minnesota's motion for summary judgment on Count I is therefore granted.

---

[5]Instead, *Anderson* held that grievance procedures, as applied to retirees, are not presumptively mandatory. *Anderson*, 752 F.2d at 1295-98.

[6]Although one month might sound like a short length of time, it is comparable to the period of time TEMPO had to file a grievance on Moilanen's behalf. Under the CBA, TEMPO is required to file grievances within twenty-five days of the date of the event underlying the grievance or the date the aggrieved party first had knowledge of the event underlying the grievance, whichever is later. Docket No. 36 at 12.

2. Count II

In Count II, Moilanen alleges that Education Minnesota breached the CBA by obtaining a disability policy that had a maximum benefit level of less than two-thirds of his salary.  There is no dispute that Moilanen exhausted the grievance process with respect to this claim.[7]  That process ended in a settlement that Moilanen refused to accept.

As noted, if a CBA contains a finality provision, an employee is bound by the result of the grievance process unless he can prove that the union breached its duty of fair representation.  *Waldron*, 388 F.3d at 594.  Here, the CBA provides that arbitration is final and binding.  Docket No. 35 at 13; Docket No. 36 at 12.  Although Moilanen's claim was settled short of arbitration, Moilanen does not contend that TEMPO lacked the authority to enter into a binding settlement.  In fact, Moilanen conceded at oral argument that, if he had been a union member at the time of the settlement, he would be bound by it.  *Cf. Bowen v. U.S. Postal Serv.*, 459 U.S. 212, 226 (1983) ("When the union, as the exclusive agent of the employee, waives arbitration or fails to seek review of an adverse decision, the employer should be in substantially the same position as if the employee had had the right to act on his own behalf and had done so.").

Moilanen's only argument with respect to this claim, then, is that because he was no longer a union member at the time his claim was settled, he is not bound by the result.  But Moilanen cites no authority for this proposition, and it would be strange if the otherwise binding result of a mandatory grievance process could be undone by the happenstance of an employee leaving his job before the grievance was resolved.  The Court therefore concludes that Moilanen

---

[7]Although Education Minnesota seemed to argue in its brief that Moilanen failed to exhaust this claim, it conceded at oral argument that Moilanen had done so.

can overcome the binding nature of the settlement only by proving that the union breached its duty of fair representation. *Waldron*, 388 F.3d at 594. As Moilanen claims no such breach, Count II must be dismissed.

*C. Count III*

In Count III, Moilanen alleges that Education Minnesota's "intentional purchase of an income protection plan that specifically limited mental disability protection to twenty-four months" violated the ADA by treating mental disability less favorably than physical disability. Compl. ¶ 37. As Education Minnesota points out, though, courts have not been hospitable to such claims. *See, e.g.*, *EEOC v. Staten Island Sav. Bank*, 207 F.3d 144, 152 (2d Cir. 2000) ("[W]e agree with the other circuits to have addressed the issue that the plain language of Title I of the ADA 'does not require equal coverage for every type of disability' and that 'such a requirement, if it existed, would destabilize the insurance industry in a manner definitely not intended by Congress when passing the ADA.'" (quoting *Ford v. Schering-Plough Corp.*, 145 F.3d 601, 608 (3d Cir. 1998)); *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104, 1116-18 (9th Cir. 2000) (rejecting ADA claim premised on two-year limitation on benefits for disability caused by mental illness); *Lewis v. Kmart Corp.*, 180 F.3d 166, 169-72 (4th Cir. 1999) (same); *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1101-02 (10th Cir. 1999) (same); *Ford*, 145 F.3d at 608-12 (same); *Parker v. Metro. Life Ins. Co.*, 121 F.3d 1006, 1015-19 (6th Cir. 1997) (en banc) (same).

The Eighth Circuit does not appear to have addressed whether an employer violates the ADA by offering different levels of coverage for mental and physical disabilities, but the Court agrees with Education Minnesota that the Eighth Circuit will likely agree with every other circuit

that has addressed the issue and hold that the practice does not violate the ADA. *Cf. Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 677-78 (8th Cir. 1996) (rejecting claim that exclusion of medical coverage for infertility treatments violated the ADA). Moilanen argues, though, that Education Minnesota's conduct violated the ADA because the CBA did not permit Education Minnesota to purchase a policy that provided lesser benefits for different types of disabilities. But that fact would establish a breach of contract, not a violation of the ADA. (And Moilanen cannot base a § 301 claim on such a breach because he failed to grieve it.) The Court therefore grants summary judgment on Moilanen's ADA claim.

### D. Count IV

In Count IV, Moilanen alleges that Education Minnesota's "intentional purchase of an income protection plan that specifically limited mental disability protection to twenty-four months" violated the ADEA. Compl. ¶ 47. Moilanen does not explain how the two-year cap discriminates on the basis of age. Indeed, as Education Minnesota points out, the cap falls more heavily on younger employees than on older employees. The Court therefore grants Education Minnesota's motion for summary judgment with respect to Count IV.

### ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment [Docket No. 30] is GRANTED.

2. Count I of plaintiff's complaint [Docket No. 1] is DISMISSED WITHOUT PREJUDICE for failure to exhaust the contractual grievance process.

3.  The remainder of plaintiffs' claims are DISMISSED WITH PREJUDICE AND ON THE MERITS.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated:  February 17, 2009         s/Patrick J. Schiltz
                                  Patrick J. Schiltz
                                  United States District Judge